IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRISTOL-MYERS SQUIBB COMPANY AND PFIZER INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. _______________ |
| TAHO PHARMACEUTICALS LIMITED, | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiffs Bristol-Myers Squibb Company ("BMS") and Pfizer Inc. ("Pfizer") (BMS and Pfizer, collectively, "Plaintiffs"), by their attorneys, hereby allege as follows:

**NATURE OF THE ACTION**

1. Plaintiffs are two of the leading innovative pharmaceutical companies in the world, with a deep commitment to discovering new lifesaving drugs and delivering them to patients.

2. This case relates to the Plaintiffs' blockbuster drug Eliquis® (apixaban), which has helped tens of millions of patients and is celebrated as one of the world's most successful drugs. Approved by the U.S. Food and Drug Administration ("FDA") in 2012, Eliquis® has proven safe and effective for, *inter alia*, reducing the risk of stroke and systemic embolism and for treating deep vein thrombosis and pulmonary embolism. Both the unique active ingredient and the unique formulation of Eliquis® have contributed to the drug's success.

3. The FDA's Orange Book lists two patents for Eliquis®: U.S. Patent No. 6,967,208 ("the '208 patent"), which protects the active ingredient apixaban and, with its applicable pediatric exclusivity, expires in May 2027, and U.S. Patent No. 9,326,945 ("the '945

patent," Ex. A), which protects formulations of apixaban and, with its applicable pediatric exclusivity, expires in August 2031.

4. Seeking to benefit from Plaintiffs' investments, inventions, and data, multiple companies previously filed drug applications with the FDA for approval of apixaban products prior to expiration of the '208 and '945 patents. Plaintiffs accordingly initiated litigation under the Hatch-Waxman framework and, after a bench trial, won in 2020, *Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*, 477 F. Supp. 3d 306, 311 (D. Del. 2020), and on appeal to the Federal Circuit in 2021, *Bristol-Myers Squibb Co. v. Sigmapharm Labs., LLC*, 858 F. App'x 359 (Fed. Cir. 2021).

5. Defendant TAHO Pharmaceuticals Limited ("TAHO" or "Defendant") now also seeks to benefit from Plaintiffs' investments, inventions, and data, by requesting FDA approval of apixaban products prior to expiration of the '945 patent (but not the '208 patent). More specifically, based upon information provided by TAHO, TAHO filed with the FDA a drug application under § 505(b)(2) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 355(b)(2) ("TAHO's 505(b)(2) Application"), seeking approval to market apixaban products ("TAHO's 505(b)(2) Products"), and included with that application a paragraph IV certification as to the '945 patent.

6. In view of TAHO's paragraph IV certification and information about TAHO's 505(b)(2) Products that is currently available to Plaintiffs, Plaintiffs bring this action against TAHO for infringement of the '945 patent.

## PARTIES

7. BMS is a corporation organized and existing under the laws of Delaware, having a principal place of business at Route 206 and Province Line Road, Princeton, New Jersey 08543.

8. Pfizer is a corporation organized and existing under the laws of Delaware, having a principal place of business at 66 Hudson Boulevard East, New York, New York 10001.

9. Plaintiffs are engaged in the business of creating, developing, and bringing to market revolutionary pharmaceutical products to help patients prevail against serious diseases, including treatments for thromboembolic disorders. Plaintiffs sell Eliquis® in this judicial district and throughout the United States.

10. On information and belief, TAHO is a corporation organized and existing under the laws of Taiwan, with headquarters located at 3F, No. 550, Ruiguang Road, Neihu District, Taipei, 11492, Taiwan.

11. Based upon publicly available information, TAHO is developing a portfolio of pharmaceutical drug products for which it is seeking marketing approval in jurisdictions around the world. In addition to other products under development, TAHO has submitted TAHO's 505(b)(2) Application to the FDA seeking approval to engage in the commercial manufacture, use, offering for sale, sale, and/or importation of TAHO's 505(b)(2) Products.

12. On information and belief, following any FDA approval of TAHO's 505(b)(2) Application, TAHO will market, distribute, offer for sale, and/or sell TAHO's 505(b)(2) Products throughout the United States, including in Delaware.

## JURISDICTION AND VENUE

13. This case arises under the patent laws of the United States, 35 U.S.C. §§ 100 et seq., and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

14. Venue is proper in this Court under 28 U.S.C. § 1391, and this Court has personal jurisdiction over TAHO. TAHO is a foreign corporation not residing in any United States district and, thus, may be sued in any judicial district. *See* 28 U.S.C. § 1391(c).

15. This Court has personal jurisdiction over TAHO, including at least under Federal Rule of Civil Procedure 4(k)(2). This action involves a claim arising under federal law, and TAHO is not subject to jurisdiction in any state's courts of general jurisdiction. Exercising jurisdiction is consistent with the United States Constitution and laws. For example, exercising jurisdiction is consistent with due process because, on information and belief, Delaware is a likely destination of TAHO's 505(b)(2) Products that are at issue in this action. On information and belief, upon approval of TAHO's 505(b)(2) Application, TAHO will market and sell TAHO's 505(b)(2) Products in Delaware and throughout the United States and will derive substantial revenue therefrom. On information and belief, upon approval of TAHO's 505(b)(2) Application, TAHO will place TAHO's 505(b)(2) Products into the stream of commerce with the expectation or knowledge and the intent that such products will be purchased and used by consumers in Delaware and throughout the United States.

## DEVELOPMENT OF ELIQUIS®

16. For more than 50 years, warfarin was the only FDA-approved oral anticoagulant, but the drug had significant drawbacks that limited its usefulness. For example, warfarin interacts with common foods and other drugs and also has a narrow therapeutic window,

which complicates dosing the drug effectively. Dozens of leading pharmaceutical companies tried to develop alternatives to warfarin without success. BMS scientists prepared and screened thousands of compounds before discovering apixaban in the early 2000s.

17. Having a compound does not equate to having a drug that is ready for patients. So, even after discovering apixaban, Plaintiffs undertook additional years of research and development before arriving at a drug that could be safely and effectively administered to patients. During clinical trials, Plaintiffs' scientists observed unexpectedly diminished apixaban exposure using certain formulations of the compound. After further work and investigation, they determined that apixaban's bioavailability is dissolution-rate limited and that maintaining a dissolution rate where at least 77% of the apixaban (by weight) dissolved in 30 minutes achieved consistent absorption. Plaintiffs' scientists determined that they could consistently accomplish their desired dissolution rate if 90% of the crystalline apixaban particles had a diameter less than or equal to 89 µm—i.e., if the particle size of the crystalline apixaban had a "D90" less than or equal to 89 µm. By developing apixaban formulations with that particle size and dissolution profile, Plaintiffs' scientists achieved a means for safely and effectively administering apixaban, leading to the drug Eliquis®.

18. Eliquis® was approved by the FDA in December 2012, and is now marketed under New Drug Application ("NDA") No. 202155 for the following indications: (1) to reduce the risk of stroke and systemic embolism in adult patients with nonvalvular atrial fibrillation; (2) for the prophylaxis of deep vein thrombosis ("DVT"), which may lead to pulmonary embolism ("PE"), in adult patients who have undergone hip or knee replacement surgery; (3) for the treatment of DVT and PE, and for the reduction in the risk of recurrent DVT and PE in adult patients following initial therapy; and (4) for the treatment of venous thromboembolism ("VTE") and

reduction in the risk of recurrent VTE in pediatric patients from birth and older after at least 5 days of initial anticoagulant treatment. A copy of the prescribing information for Eliquis® is attached as Exhibit B.

**PLAINTIFFS' '945 PATENT**

19. On May 3, 2016, the U.S. Patent and Trademark Office duly and legally issued the '945 patent, titled "Apixaban Formulations." A true and correct copy of the '945 patent is attached hereto as Exhibit A. The claims of the '945 patent are valid, enforceable, and not expired. Plaintiffs are the joint owners of the '945 patent and have the right to enforce it.

20. The '945 patent was the subject of prior patent infringement litigation in the District of Delaware. On August 13, 2020, the Court found in favor of Plaintiffs against three defendants, holding, *inter alia*, that the '945 patent claims were infringed and not invalid. *See Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*, 477 F. Supp. 3d 306, 311, 342, 354-56 (D. Del. 2020). The Federal Circuit affirmed the Court's opinion on September 3, 2021. *See Bristol-Myers Squibb Co. v. Sigmapharm Labs., LLC*, 858 F. App'x 359, 360 (Fed. Cir. 2021).

21. The '945 patent, with its applicable pediatric exclusivity, expires on August 24, 2031.

**TAHO'S 505(B)(2) APPLICATION**

22. By letter dated September 8, 2026, and received by Plaintiffs via Federal Express no earlier than September 9, 2026 (the "Notice Letter"), TAHO notified Plaintiffs that TAHO submitted its 505(b)(2) Application (No. 219493) to the FDA, seeking approval to market apixaban oral film, 2.5 mg and 5 mg, in reliance on Plaintiffs' investments, inventions, and data.

23. By submitting its 505(b)(2) Application and as stated in TAHO's Notice Letter, TAHO has represented to the FDA that its 505(b)(2) Products have the same active ingredient and dosage amounts as Eliquis®; that, like Eliquis®, TAHO's 505(b)(2) Products are

immediate-release; that TAHO desires for the FDA to rely on Plaintiffs' Eliquis® data to approve TAHO's 505(b)(2) Products; and that TAHO's 505(b)(2) Application contains data as required to demonstrate that its 505(b)(2) Products are bioavailable and/or bioequivalent to Eliquis®.

24. TAHO's 505(b)(2) Application included a paragraph IV certification pursuant to 21 U.S.C. § 355(b) and 21 C.F.R. § 314 with respect to the '945 patent. According to its Notice Letter, TAHO alleges that "the '945 patent will not be infringed by the commercial manufacture, importation, use, sale, or offer for sale of" TAHO's 505(b)(2) Products and that TAHO seeks approval to engage in the commercial manufacture, use, and sale of its 505(b)(2) Products before the '945 patent expires.

25. Based upon the Notice Letter, TAHO had knowledge of the '945 patent at least as of the time TAHO submitted the paragraph IV certification in its 505(b)(2) Application.

26. On information and belief, TAHO did not submit a paragraph IV certification with respect to the '208 patent. Because TAHO is not challenging the '208 patent, TAHO will not receive FDA approval to market its 505(b)(2) Products before May 21, 2027, when the '208 patent expires with pediatric exclusivity.

27. On information and belief, TAHO intends to engage in the manufacture, use, offer for sale, sale, and/or importation of TAHO's 505(b)(2) Products immediately and imminently upon approval of its 505(b)(2) Application.

28. This action is being commenced before the expiration of 45 days from the date that Plaintiffs received the Notice Letter.

29. Counsel for Plaintiffs obtained and reviewed portions of TAHO's 505(b)(2) Application pursuant to an agreed Offer of Confidential Access. As described in more detail below, TAHO's Notice Letter, materials provided by TAHO to Plaintiffs' counsel, and publicly

available information support the conclusion that TAHO infringed the ’945 patent by filing its 505(b)(2) Application with a paragraph IV certification as to that patent, and that if permitted, the manufacture, marketing, and sale of TAHO’s 505(b)(2) Products would infringe the ’945 patent.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,326,945**

30. Plaintiffs incorporate each of the preceding paragraphs 1-29 as if fully set forth herein.

31. TAHO’s submission of its 505(b)(2) Application for approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of TAHO’s 505(b)(2) Products before the expiration of the ’945 patent constituted an act of infringement of at least one claim of the ’945 patent, including but not limited to claims 1 and 12, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(e)(2)(A).

32. TAHO’s commercial manufacture, use, offer for sale, sale, and/or importation of its 505(b)(2) Products prior to expiration of the ’945 patent, and TAHO’s inducement of and/or contribution to such conduct, would infringe at least one claim of the ’945 patent, including but not limited to claims 1 and 12, either literally or under the doctrine of equivalents, under 35 U.S.C. §§ 271(a), (b), and/or (c).

33. Upon FDA approval of TAHO’s 505(b)(2) Application, TAHO will infringe one or more claims of the ’945 patent, including but not limited to claims 1 and 12, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing TAHO’s 505(b)(2) Products, and/or by actively inducing and contributing to infringement of the ’945 patent by others, under 35 U.S.C. §§ 271(a), (b), and/or (c), unless enjoined by the Court. Such infringement is imminent because, among other things, TAHO has notified Plaintiffs of the submission of its 505(b)(2) Application seeking approval to engage in the

commercial manufacture, use, offer for sale, sale, and/or importation of TAHO's 505(b)(2) Products before the expiration of the '945 patent.

34. For example, claim 1 of the '945 patent recites:

> A solid pharmaceutical composition comprising a therapeutically effective amount of crystalline apixaban particles and a pharmaceutically acceptable diluent or carrier,
>
> > wherein the crystalline apixaban particles have a $D_{90}$ equal to or less than about 89 μm, and
> >
> > wherein at least 77 wt % of apixaban dissolves within 30 minutes in a pH 6.8 phosphate buffer containing 0.05% sodium lauryl sulfate.

35. Claim 12 of the '945 patent recites:

> A solid pharmaceutical composition comprising a therapeutically effective amount of apixaban and a pharmaceutically acceptable diluent or carrier,
>
> > wherein apixaban comprises crystalline apixaban particles,
> >
> > wherein the crystalline apixaban particles have a D90 equal to or less than about 89 μm, and
> >
> > wherein, as measured using a USP Apparatus 2 at a paddle rotation speed of 75 rpm in 900 mL, of a dissolution medium at 37°C., at least 77 wt % of apixaban in the pharmaceutical composition dissolves within 30 minutes in the dissolution medium, and the dissolution medium is 0.05 M sodium phosphate at a pH 6.8 containing 0.05% sodium lauryl sulfate.

36. The Notice Letter, materials provided by TAHO to counsel for Plaintiffs, and publicly available information show that TAHO's 505(b)(2) Products are solid pharmaceutical compositions comprising a therapeutically effective amount of apixaban and a pharmaceutically acceptable diluent or carrier.

37. TAHO's 505(b)(2) Products comprise a solid pharmaceutical composition. The Notice Letter states that TAHO's 505(b)(2) Products are formulated as an oral film. Oral films are a known type of solid pharmaceutical composition.

38. The 2.5 mg and 5 mg dosage amounts of apixaban in TAHO's 505(b)(2) Products are therapeutically effective amounts of apixaban. Those dosage amounts correspond with dosage amounts in Eliquis®, which is approved by the FDA for therapeutic use. TAHO's 505(b)(2) Products contain a therapeutically effective amount of crystalline apixaban.

39. TAHO's 505(b)(2) Products contain a pharmaceutically acceptable diluent or carrier. The Notice Letter and TAHO's 505(b)(2) Application identify the components of TAHO's 505(b)(2) Products as the active ingredient apixaban and pharmaceutically acceptable diluents or carriers.

40. The Notice Letter, materials provided by TAHO to counsel for Plaintiffs, and publicly available information show that TAHO's 505(b)(2) Products contain crystalline apixaban particles. For example, TAHO has publicly described the use of crystalline apixaban in oral films. *See* Ex. C, U.S. Patent No. 12,036,216 at 4:1 ("In one embodiment, the apixaban is crystalline."). Materials provided by TAHO also confirm the presence of crystalline apixaban in TAHO's 505(b)(2) Products. Further, TAHO's Notice Letter does not dispute that TAHO's 505(b)(2) Products contain crystalline apixaban particles.

41. The Notice Letter, materials provided by TAHO to counsel for Plaintiffs, and publicly available information show that crystalline apixaban particles in TAHO's 505(b)(2) Products have a D90 equal to or less than about 89 µm. For example, based on the materials provided by TAHO, the crystalline apixaban contained in TAHO's 505(b)(2) Products has a particle size below the threshold D90 equal to or less than about 89 µm. Further, TAHO's Notice

Letter does not dispute that TAHO's 505(b)(2) Products contain crystalline apixaban particles with a particle size below the threshold D90 equal to or less than about 89 µm.

42. The Notice Letter, materials provided by TAHO to counsel for Plaintiffs, and publicly available information support the conclusion that TAHO's 505(b)(2) Products have the dissolution profile claimed in the '945 patent and/or will need to have the dissolution profile claimed in the '945 patent in order to secure FDA approval.

43. Eliquis® 2.5 mg and 5 mg tablets are immediate release formulations containing apixaban and have the dissolution profile recited in claims 1 and 12 of the '945 patent.

44. On information and belief, TAHO intends for TAHO's 505(b)(2) Products to have a similar release profile to Eliquis® in order to rely upon Plaintiffs' clinical testing for its 505(b)(2) Application. The Notice Letter, materials provided by TAHO to counsel for Plaintiffs, and publicly available information support the conclusion that TAHO's 505(b)(2) Products are designed for immediate release.

45. For example, TAHO has described its oral film formulations of apixaban as "immediate release," and has stated specifically that "[d]esirable rates include fast or immediate release profiles." Ex. C, U.S. Patent No. 12,036,216 at 14:58-59, 28:5, 28:15. In addition, TAHO evaluated the dissolution of TAHO's 505(b)(2) Products using immediate release testing protocols.

46. A person of ordinary skill in the art would understand how to conduct dissolution testing of an oral film, including by using an appropriate sinker to avoid interfering with the dissolution of the oral film. Based upon the information provided by TAHO and publicly available information, TAHO's 505(b)(2) Products would meet the dissolution profile limitations of claims 1 and 12 when evaluated under the claimed conditions.

47. For example, TAHO has publicly reported dissolution data for apixaban oral films containing different excipients and amounts of excipients. *See, e.g.*, Ex. C, U.S. Patent No. 12,036,216 at 22:62-24:42. That data shows that different combinations of polymers and the amounts of those polymers in the composition affected the percentage of released apixaban at 30 minutes. *See, e.g.*, *id.* at 20:18-21:58, 22:62-24:42. Based on TAHO's publicly reported dissolution data and the composition of TAHO's 505(b)(2) Products, TAHO's 505(b)(2) Products would meet the dissolution profile limitations of claims 1 and 12 of the '945 patent.

48. In addition, the FDA issued guidance on Dissolution Testing and Acceptance Criteria for Immediate-Release Solid Oral Dosage Form Drug Products Containing High Solubility Drug Substances in 2018. *See* Ex. D, 2018 FDA Guidance. This FDA guidance applies to apixaban, which is a drug classified as having high solubility under the relevant Biopharmaceutical Classification System (BCS), which evaluates the solubility of the highest therapeutic dosage amount in 250 mL of aqueous media at specified temperature and pH.

49. The FDA's 2018 guidance "applies to solid orally-administered IR [immediate-release] drug products." Ex. D, 2018 FDA Guidance at 3. The FDA guidance provides acceptance criteria for "immediate release solid oral drug products," which is dissolution of "80% in 30 minutes." *Id.* at 5. On information and belief, to satisfy the FDA guidance for an immediate release dosage form, TAHO's 505(b)(2) Products will need to have the dissolution profile recited in claims 1 and 12 of the '945 patent.

50. A substantial and justiciable controversy exists between the parties hereto as to the infringement of the '945 patent by TAHO's submission of its 505(b)(2) Application and by TAHO's desired commercial manufacture, use, and sale of its 505(b)(2) Products.

51. Upon information and belief, TAHO acted, and upon FDA approval of its 505(b)(2) Application will act, without a reasonable basis for believing that it would not be liable for directly and/or indirectly infringing the ’945 patent.

52. Unless TAHO is enjoined from directly or indirectly infringing the ’945 patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that this Court grant the following relief:

(a) A judgment that the ’945 patent claims are not invalid; are not unenforceable; were infringed under 35 U.S.C. § 271(e)(2)(A) by TAHO’s submission of its 505(b)(2) Application with a paragraph IV certification; and would be infringed under 35 U.S.C. §§ 271(a), (b), and/or (c), either literally or under the doctrine of equivalents, by TAHO’s manufacture, use, offer to sell, sale, or importation of TAHO’s 505(b)(2) Products, including inducement thereof or contribution thereto, prior to the expiration of the ’945 patent;

(b) An Order pursuant to 35 U.S.C. § 271(e)(4)(A) requiring that the effective date of any FDA approval of TAHO’s 505(b)(2) Application be no earlier than the expiration of the ’945 patent, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled;

(c) An Order permanently enjoining TAHO; its affiliates, subsidiaries, and/or officers, agents, servants, and employees; and those acting in privity or concert with TAHO, from making, using, offering to sell, selling, or importing TAHO’s 505(b)(2) Products until after the expiration of the ’945 patent, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled;

(d) Damages or other monetary relief, including costs, fees, pre-judgment interest, and/or post-judgment interest, to Plaintiffs if TAHO engages in commercial manufacture, use, offer to sell, or sale in the United States, or the importation into the United States, of TAHO's 505(b)(2) Products prior to the expiration of the '945 patent, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled, as well as any damages or other monetary relief on the basis that this is an exceptional case; and

(e) Such further and other relief as this Court deems proper and just.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs Bristol-Myers Squibb Company and Pfizer Inc.*

OF COUNSEL:

Amy K. Wigmore
Heather M. Petruzzi
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000

Andrew J. Danford
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Gillian T. Farrell
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, NY 10007
(212) 230-8800

October 23, 2026